# TEXAS MIDLAND R. R. v. WILSON.
## (No. 2881.)

(Court of Civil Appeals of Texas. Texarkana. April 23, 1924. Rehearing Denied June 26, 1924.)

**1. Release** ⚖57(2)—**Evidence held not to show release was procured by fraudulent representations by railroad's agents.**

In servant's action for injuries against a railroad, evidence *held* not to show fraudulent representations by defendant's claim agent, and physicians inducing plaintiff to execute a release.

On Motion of Appellee for Rehearing.

**2. Railroads** ⚖17—**Whether doctor was employed by company held for jury.**

In servant's action for injuries, whether an osteopathic doctor, paid by defendant railroad, and to whom servant went at his employer's instance, was employed by the company, so as to bind it by his representations inducing execution of a release, *held* for jury.

**3. Release** ⚖17(2)—**Statement of company doctor as to time required for injured servant's recovery held mere expression of opinion.**

Statements by company's doctor to injured servant, under his care, that he would be all right, able to work in a short time, etc., made in good faith, when servant knew his knee was still swollen, *held* mere expressions of opinion, not invalidating servant's release, executed in reliance thereon.

Appeal from District Court, Lamar County; Nepman Phillips, Judge.

Action by J. H. Wilson against the Texas Midland Railroad. Judgment for plaintiff, and defendant appeals. Reversed and rendered.

On August 12, 1921, appellee was working for appellant as a member of a crew engaged in switching cars at Greenville. He was riding on the locomotive tank or tender, with his left foot on the oil box thereof, "holding on," quoting from his testimony as a witness, "to the operating rod, or the pin-lifter with my right foot kinder crossed over my left foot," when the foot on the oil box was knocked therefrom by a pile of gravel on the track between the rail and the ends of the ties. He charged that appellant was guilty of negligence in permitting the gravel to be on the track, and therefore was liable to him for injury to his person caused, he claimed, by his foot being knocked from the

---

⚖For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

oil box as stated. Appellant denied that it was guilty of negligence as charged against it, and set up as another reason why it was not liable as claimed that appellee, by an instrument in writing dated January 30, 1922, in consideration of $1,118.01 paid to him, released it of all claim he had against it on account of the injury he suffered. Appellee admitted that he executed a release as charged by appellant, but he charged that—

"He was induced to do so by certain representations, agreements and promises made by the defendant and its authorized agents and servants, which representations were not true, but were false, and which agreement and promises were not performed and carried out and were not intended to be carried out at the time said agreement and promises were made, but were made for the purpose of fraudulently inducing the plaintiff to sign his name to said release."

The "representations, agreements and promises" referred to, as alleged, were, briefly stated, as follows: (1) That Dr. Munday, appellant's chief surgeon, represented to appellee that his injuries were only temporary, were curable, and that he (Munday) could cure them in a short while. (2) That Dr. Maxwell, to whom appellee went for treatment from Dr. Munday, at appellant's instance, represented to him that he could be cured in about 45 days, and, after treating him longer than 45 days, represented to him that he was then able to go back into the service of appellant "and perform the duties of gravel pit brakeman, and that in two weeks thereafter he would be well and be able to take up any and all duties required of a brakeman." (3) That Patton, appellant's claim agent, agreed, "in consideration of the signing of a release, to place him to work as a gravel pit brakeman."

In the view taken by this court of the question as to the release, it is not necessary to state matters in the record pertinent only to other questions presented in the briefs.

The injury to appellee seems to have been mainly in the knee of his left leg. He was treated, he said, by Dr. Fitzpatrick, his family physician, for about six weeks, and then by Dr. Munday, appellant's chief surgeon, who told him, he said, when he began to treat him that; quoting:

"I had a pretty bad knee and that he could have cured me all right if I had come to him at first and he could have had me at work then."

Appellee had Dr. Maxwell, an osteopath, to examine him during the time Dr. Munday was treating him, and was told by Dr. Maxwell, he said, "that they were treating him in the wrong place"; that he "had a slight dislocation." The treatment Dr. Munday gave him, appellant said, "did not appear to have much effect on his knee; it did not appear to relieve the swelling a great deal and did

not remove the pain. When he bathed it with hot water and rubbed it with liniment of some kind, or ointment, it eased it for the time being. When he did not seem to do my knee any good, I thought from the way Dr. Maxwell talked that it was useless for him to work on my knee when I had a dislocation." On November 23, 1921, appellee changed from Dr. Munday to Dr. Maxwell, and the latter treated him from that day until January 14, 1922, when he (Dr. Maxwell) dismissed him because, Maxwell said in a letter to Patton, appellee claimed "he was not making any progress." "While," continued the doctor in the letter, "he claims that he is not any better than when I took his case, from our point of view we feel we have corrected all the trouble that we could find, which was supposed to have been caused from an accident while in your road's employment."

Appellee testified that when Dr. Maxwell ceased treating him the doctor said to him, "You are going to be all right," and told him he wanted him "to go and see or write" Mr. Patton, appellant's claim agent, "and tell him that he recommended that I go to work on the gravel pit job and take it easy for a couple of weeks, let the other fellow do the work, and move around and get my muscles hardened, and it would only be a short time until I would be back myself again."

Appellee explained his reference to the "gravel pit job" as follows:

"In November, 1921, this gravel pit job was open; that is, there was a vacancy for one brakeman at the gravel pit. They advertised this job like they always do, and the oldest man in the service can put in an application for it and he is accepted, and while I was in Terrell in November I learned that this gravel pit job was advertised, for one brakeman at the gravel pit. Dr. Munday was treating me at that time, and on the 21st of November, or the 22d, I put in my bid for this gravel pit job, for brakeman at the gravel pit, and on the 22d I was assigned to this job."

Appellee testified that he went to see Patton, the claim agent, on January 28, and told him that Dr. Maxwell had sent him, and, he said—

"I stated the facts to him that Dr. Maxwell had told me. He asked me if I wanted to settle, and I told him yes, I was glad to think I was able to settle and go to work. * * * Mr. Patton wanted to know what I would take to settle, and I said, 'All I want is what is right, whatever my car made, and in the course of a week or ten days, as soon as the weather settles, I want the gravel pit job.' * * * As to how soon after that I was ready to go to work, I was to go to work whenever I got ready. Mr. Patton told me that it did not make any difference to the Texas Midland how soon I went to work, it was not costing the Texas Midland anything, and I could go to work whenever I got ready, and I told him that as quick as the weather settled a little I want-

ed to go to the gravel pit. That gravel pit job was a part of the settlement I had with Mr. Patton; certainly it was."

Patton, the claim agent who represented appellant in the negotiations resulting in the settlement agreed upon and the execution by appellee of the release referred to, testified:

"As general claim agent, it is a part of my duty to adjust personal injury cases. The Texas Midland Railroad gives me authority to do that. When it comes to the settlement of a case, I sometimes rely on the statement of the injured party and the surgeons both, but I often leave it to the injured party himself. I did consult the physicians in this case. I talked to Dr. McCuistion, Dr. Munday, and I wrote to Dr. Maxwell and asked him for a report, and he did send it to me. From information I obtained from the surgeons, I came to the conclusion that he was about well of his injury, but I felt that way about it more from what he said than anything else. From the reports that were given me and from what he said, I thought he was practically well; everything indicated that he was."

It appears from a written instrument in the record, dated February 3, 1922, and signed by appellant's general manager, that appellee was discharged as a brakeman January 31, 1922, "account unsatisfactory settlement for personal injury." After that, he said, he made no effort "to get the gravel pit job."

The court instructed the jury to find for appellee on the issue as to the release presented by the pleadings, if they believed, other conditions concurring, (1) that a part of the consideration therefor was an undertaking by appellant to employ appellee as gravel pit brakeman; (2) or that Dr. Munday represented to appellee as a fact that his injuries were not severe, but were such that he would soon be fully recovered therefrom; (3) or that Dr. Maxwell represented to him as a fact "that his injuries were about well and that he would within a few days or weeks be fully recovered from them."

Issues as to negligence on the part of appellant, and contributory negligence and assumed risk on the part of appellee, were also submitted to the jury by the court's charge.

The verdict was a general one, and in appellee's favor for $4,618, less the $1,118 appellant paid him in the settlement.

Coke & Coke and S. W. Marshall, all of Dallas, and Moore & Hardison, of Paris, for appellant.

B. Q. Evans, of Greenville, and Lattimore & Birmingham, of Paris, for appellee.

WILLSON, C. J. (after stating the facts as above). [1] As we construe the testimony, it did not warrant a finding that appellee was not bound by the release he executed on any of the grounds he relied upon, and therefore we think the trial court should have instructed the jury to find in appellant's favor.

One of the grounds relied upon was that a part of the consideration to appellee for the release was the promise of appellant's claim agent, Patton, never performed, appellee charged, that he should have the "gravel pit job." There was no evidence adduced of any such promise by Patton. But it did appear without dispute in the testimony that appellee applied to appellant for that job November 21, 1921, that appellant awarded same to him November 22, 1921, and that the award had not been revoked January 30, 1922, the day appellee executed the release.

Another one of the grounds was that appellee was induced to execute the release by his reliance upon the truth of a statement Dr. Munday made to him when he went to the doctor for treatment about six weeks after he was injured. The statement was that appellee "had a pretty bad knee," but that he (the doctor) could have cured it and had him (appellee) at work if he "had come to him at first." The statement was made about three months before appellee executed the release, and, reasonably, could not have induced him to execute it.

The other ground relied upon as entitling appellee to avoid the release was the statement made to him by Dr. Maxwell, set out above. Whether that statement, if it appeared that appellant was bound by it, when considered in connection with the other testimony in the case, would support a finding that appellee was not bound by the release, need not be determined; for we think it did not so appear. Dr. Maxwell was not employed by appellant. He was not in any sense its agent. He was chosen by appellee and employed by him to treat him. All appellant had to do with it was to pay for the service the doctor rendered.

The judgment will be reversed, and judgment will be here rendered that appellee take nothing by his suit against appellant.

### On Motion of Appellee for Rehearing.

[2, 3] It is insisted that the conclusion reached by us that the testimony did not warrant a finding that Dr. Maxwell was employed by appellant, and acted as its agent in treating appellee and in making the representation complained of, was wrong. We have again read and considered the testimony relied upon as sufficient to support such a finding, and are convinced that the conclusion in question was erroneous, as claimed. We now think there was testimony the jury had a right to believe which would have supported such a finding. But we do not think a different disposition than the one determined upon when the record was first before us should therefore be made of the appeal. There was no testimony indicating that the statement attributed to Dr. Maxwell was not made in good faith, and appellee testified that at the time it was made

his knee "was still swollen and quite painful." The statement, as testified to by appellee, was as follows:

"You are going to be all right. You write Mr. Patton a letter, or go and see him, and tell him I sent you to tell him that I recommend you have the gravel pit job. You exercise your muscles, take things easy for a couple of weeks, and by that time you will be your own self, all O. K., and be in a position to resume your usual work."

As we view it, the statement was not of a fact, but was a mere expression of an opinion the doctor entertained, and was within a rule which has been stated as follows:

"Representations by the releasee's physician as to future results of the injuries, such as the time necessary for or likelihood of recovery, if made in good faith, are mere expressions of opinion and not representations of past or present facts, and, though they prove not to be true, will not afford ground for avoiding a release." 23 R. C. L. 392.

The motion is overruled.